276 So.2d 505 (1973)
Elmer G. YOUNGBLOOD et al., Appellants,
v.
CITRUS ASSOCIATES OF THE NEW YORK COTTON EXCHANGE, INC., et al., Appellees.
No. 72-440.
District Court of Appeal of Florida, Fourth District.
April 17, 1973.
Rehearing Denied May 14, 1973.
*506 Stephen P. Kanar, of Fishback, Davis Dominick & Simonet, Orlando, for appellants.
Alton G. Pitts and Jon M. Wilson, of Pitts, Eubanks, Ross & Rumberger, Orlando, and Maurice Mound, of Rein, Mound & Cotton, New York City, New York, for appellees.
CROSS, Judge.
Appellants-plaintiffs, Elmer G. Youngblood, Leon Cohn, Robert W. Hansche, B. Walkinshaw and Keith Anderson enter this interlocutory appeal from an order of the trial court quashing service of process upon the appellee-defendant, Citrus Associates of the New York Cotton Exchange, Inc., a New York corporation. We affirm.
The plaintiffs instituted a class action against Citrus Associates of the New York Cotton Exchange, Inc. (Citrus Associates), alleging that plaintiffs were damaged by actions taken by the board of directors of Citrus Associates, which limited trading in frozen concentrated orange juice, thus depressing the price and enabling other investors to manipulate the market, all of which redounded to the detriment of the plaintiffs. Process was personally served in the State of Florida on Joe Marshburn, the first vice president of Citrus Associates, both individually and in an attempt to bind the corporation. Citrus Associates filed a motion to quash service of process, and plaintiffs instituted discovery proceedings limited to the question of jurisdiction in an attempt to establish that Citrus Associates is subject to service of process under the Florida "long-arm" statutes.
The facts before the trial court were: Citrus Associates is an exchange which deals solely with the trading of frozen concentrated orange juice futures. Citrus Associates' only business is to furnish facilities for the trading in these futures, and its directors, officers and members serve without compensation. Citrus Associates does not maintain any offices, bank accounts, *507 telephone listings, books of account or books of record in the State of Florida. Citrus Associates has no goods stored in this state. It neither owns nor leases any property; it pays no bills; it receives no money from Florida for its business operations and it has no officers, directors, employees, or agents who perform any function for it in the State of Florida. All meetings of its board of directors and its executive committee take place in the State of New York.
To become an associate member of the exchange, the applicant must submit a membership application accompanied by a recommendation of a present member. The prospective member is then investigated (investigations have occurred in Florida) and if approved, he is then accepted.
Orange juice futures are traded on the floor of the exchange only by Class A members of Citrus Associates. Generally speaking, trading is done in contracts for the delivery of frozen concentrated orange juice. A buyer purchases a contract which represents orange juice stored in Florida. Delivery under the contract is made to the buyer by delivery of a negotiable warehouse receipt. These warehouses are, as indicated above, located solely in Florida, and before a warehouse is approved by Citrus Associates, it is inspected by them. Before delivery of the warehouse receipt is made, the parties to the transaction must secure a certificate which shows that the juice (as inspected by the United States Department of Agriculture (USDA)) meets certain standards set by Citrus Associates. The USDA charges for the inspections which do occur in Florida, but Citrus Associates does not charge for the issuance of its certificate.
Frozen concentrated orange juice (FCOJ) committee and warehouse committee meetings have occasionally taken place in Florida. The function of both committees is to make recommendations to the executive committee and board of directors of Citrus Associates. Prior to making one of these recommendations, conversations were held by FCOJ committee members in Florida which resulted in the committee recommending a temporary suspension of trading in frozen concentrated orange juice futures and a price freeze. These recommendations were subsequently adopted by the board of directors in New York and are the basis for the lawsuit in this case.
The only other Florida activity on the part of Citrus Associates was a cocktail party held in Orlando, Florida, for one of its members.
After a hearing on the motion to quash service, the trial court determined that the above facts showed that the subject matter of the suit clearly arose in New York, and, further, that any exception to the requirement that the matter complained of must arise out of or be incidental to the activities of the foreign corporation conducted within this state did not exist in this case. Accordingly, the trial court entered its order quashing service of process. This interlocutory appeal followed.
In determining a question of jurisdiction which arises under the Florida "long-arm" statutes, we must consider that the provisions for making foreign corporations subject to service of process and subject to the jurisdictions of the Florida courts is a matter within the legislative discretion of the state lawmaking body. Confederation of Canada Life Ins. Co. v. Vegay Arminan, 144 So.2d 805 (Fla. 1962). Legislatures have, generally speaking, enacted three types of long-arm statutes: those which require more activities or contacts than are currently required by the United States Supreme Court,[1] those which are co-extensive with the limits of the due *508 process concept,[2] and those which go beyond the due process limits and are hence unconstitutional.
The Florida "long-arm" statutes are, generally speaking, of the first type; i.e., they require more activities or contacts to sustain service of process than are currently required by the decisions of the United States Supreme Court. Therefore, any analysis of the question of whether jurisdiction in personam has been acquired over a foreign corporation must necessarily start with an analysis of the statutes.[3]
Appellants contend that service of process may be sustained under Florida Statute § 48.081 or § 48.182 (1971), F.S.A.
We deal first with appellants' contention that service is sustainable under Florida Statute § 48.081, F.S.A. In the case sub judice, service was made upon a vice president of the foreign corporation pursuant to Florida Statute § 48.081(1) (1971), F.S.A. Section 48.081(1) states, inter alia, that process against any private corporation, domestic or foreign, may be served on the vice president of the corporation. No requirement that the corporation be doing business in this state or that the cause of action arise from the corporation's activities in this state is found in this section.
Upon the absence of language to the above effect, appellants base their argument that process served according to the terms of Florida Statute § 48.081(1) (1971), F.S.A., confers in personam jurisdiction over a foreign corporation upon Florida courts provided that the corporation so served possesses minimum contacts with the State of Florida as defined by International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and subsequent cases,[4] notwithstanding the fact that the corporation does not do business in the State of Florida, or that the cause of action did not arise out of any transaction or operation connected with or incidental to the corporation's business in the State of Florida.[5]
To adopt appellants' interpretation or construction of Florida Statute § 48.081(1), F.S.A., would render the statute quite similar in effect to a California statute,[6] thus creating the same problems. For example, every case would automatically be turned into a constitutional problem of defining, according to the facts of each particular case, "minimum contacts." In addition, such a statute would probably be subject to constitutional infirmities as men of common intelligence would necessarily have to guess as to its meaning and differ as to its application.[7] This statute, under the circumstances of the instant case, cannot be applied alone, as to do so would be to violate a fundamental maxim of statutory construction, that statutes are to be construed to avoid a declaration of unconstitutionality or grave doubts on that score. Armstrong v. City of Edgewater, 157 So.2d 422 (Fla. 1963). Therefore, we determine that the requirements of doing business and connexity as delineated in Florida Statute § 48.181 (1971), F.S.A., must be read in pari materia with Florida Statute § 48.081 (1971), F.S.A. Our determination is supported by other Florida cases which have resolved similar problems. See Gordon v. John Deere Co., 320 F. Supp. 293 (N.D.Fla. 1970); Illinois Central Railroad Co. v. Simari, 191 So.2d 427 (Fla. 1966); Zirin v. Charles Pfizer & Co., 128 So.2d 594 (Fla. 1961); Eder Instrument Co. v. Allen, 253 So.2d 902 (Fla. App. 1971); Kastan v. Kastan, 222 So.2d 55 (Fla.App. 1969); Goffer v. Weston, 217 So.2d 896 *509 (Fla.App. 1969); Manus v. Manus, 193 So.2d 236 (Fla.App. 1966); Amphicar Corporation of America v. Gregstad Distributing Corp., 138 So.2d 383 (Fla. App. 1962). See also Bayitch, Conflict of Laws, Florida 1968-69, 24 U.Miami L.Rev. 434, 450-53 (1970). Contra, H. Bell & Associates, Inc. v. Keasbey & Mattison Co., 140 So.2d 125 (Fla.App. 1962).
Under this construction, Florida Statute § 48.081, F.S.A. (with the exception of subsection 5) then merely provides an alternative method of service. Therefore, to serve a foreign corporation not qualified to do business in Florida but which is doing business[8] in Florida, where the cause of action arose out of the corporation's activities in Florida, service may be made either constructively upon the secretary of state,[9] or personally upon those persons listed in § 48.081(1)-(3).
In summary, the burden of proof to sustain the validity of service of process is upon the person who seeks to invoke the jurisdiction of the court. Zirin v. Charles Pfizer & Co., supra. This party must show, when attempting to serve a foreign corporation not qualified to do business in the State of Florida, that the requirements of Florida Statute § 48.181, F.S.A. (namely, doing business and connexity) have been met and that process has been served upon a person qualified to accept such process. We would note at this point that the question of due process or "minimum contacts" is not properly discussed if a showing of doing business has been made as the doing business requirement necessarily includes the concept of minimum contacts. Wherefore, as appellants argue that connexity is not required, while in fact it is required, and as no showing of connexity has been made, service cannot be sustained under Florida Statute § 48.081, F.S.A., when read in pari materia with § 48.181 (1971).
Appellants further urge that should we find against them on the first point, service should be sustained under Florida Statute § 48.182 (1971), F.S.A. This statute[10] would permit Florida courts to exercise in personam jurisdiction over a person who commits a tort outside the state but which has consequences within the state. As indicated in Gordon v. John Deere Co., supra, and Gordon v. John Deere Co., 264 So.2d 419 (Fla. 1972) on question certified by the United States Court of Appeals, Fifth Circuit, 451 F.2d 234 (5th Cir.1971), the statute creates a new remedy and extends Florida long-arm jurisdiction to areas which it was previously unable to reach.
Again, the starting point for an answer to the question of whether service of process *510 can be sustained is the statute itself. The statute subjects nonresidents to the jurisdiction of Florida courts under the following conditions: (1) the nonresident committed a wrongful act (2) outside the state (3) which caused injury or damage to (4) persons or property within this state, (5) if the nonresident expected or should reasonably have expected the act to have consequences (6) in this state or any other state or nation and (7) derives substantial revenue from interstate or international commerce. If all of the above conditions have been met, the nonresident may be personally served in any action arising from the wrongful[11] act (a requirement of connexity) in the same manner as a nonresident who commits a wrongful act within this state.[12]
The resolution of the dispute over the validity of the service of process under Florida Statute § 48.182, F.S.A., depends on whether the requirements of connexity, the commission of a wrongful act by Citrus Associates, and the derivation of substantial revenue from interstate or international commerce by Citrus Associates have been met. We deal solely with the requirement of substantial revenue from interstate or international commerce, as the case may be decided upon this point.
It is, as previously stated, the burden of the party seeking to invoke the jurisdiction of the court to show that requirements of the statute under which jurisdiction is sought have been complied with. In the instant case, the appellants showed that Citrus Associates operates as an exchange which provides facilities for the purchase and sale of frozen concentrated orange juice futures. The corporation supports its operations by charging dues and fees to its members but such cannot be construed as substantial revenue from interstate commerce. As pointed out in the appellee's brief, members of the association who are entitled to trade on the floor of the exchange undoubtedly derive substantial revenue from interstate, if not from international commerce. However, such revenue cannot be imputed to a corporation which merely furnishes the facilities for traders in the commodity. Thus it cannot be said that this corporation derives substantial revenue from either interstate or international commerce.
Accordingly, the requirements of the long-arm statutes not having been met, the courts of Florida do not have in personam jurisdiction over Citrus Associates. Therefore, the order of the trial court quashing service of process is affirmed.
Affirmed.
REED, C.J., and OWEN, J., concur.
NOTES
[1] See Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
[2] See, e.g., Cal. Code Civ.P. § 410.10 (Supp. 1971).
[3] See Bayitch, Conflict of Laws, Florida 1968-69, 24 U.Miami L.Rev. 434, 454 (1970).
[4] See cases cited note 1, supra.
[5] See Fla. Stat. § 48.181(1) (1971), F.S.A.
[6] See note 2, supra.
[7] Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214; Bayitch, Conflict of Laws, Florida 1970-71, 26 U.Miami L.Rev. 1, 14 (1971).
[8] For a definition of doing business, see DeVaney v. Rumsch, 228 So.2d 904 (Fla. 1969), and Sayet v. Interstate Blood Bank, Inc., 245 So.2d 142 (Fla.App. 1971) (economic benefit theory); but see Flying Saucers, Inc. v. Moody, 421 F.2d 884 (5th Cir.1970) (purchase of a pleasure boat held to constitute "doing business"). It is submitted that this decision is an incorrect interpretation of Florida law, see Bayitch, supra note 7, 26 U.Miami L.Rev. at 18.
[9] See Florida Statute § 48.161 (1971), F.S.A.
[10] Fla. Stat. § 48.182, F.S.A. Service on nonresidents committing a wrongful act outside the state which causes injury within the state.  Any nonresident person, firm, or corporation who in person or through an agent commits a wrongful act outside the state which causes injury, loss, or damage to persons or property within this state may be personally served in any action or proceeding against the nonresident arising from any such act in the same manner as a nonresident who in person or through an agent has committed a wrongful act within the state. If a nonresident expects or should reasonably expect the act to have consequences in this state or any other state or nation and derives substantial revenue from interstate or international commerce, he may be served; provided, that if such nonresident is deceased, his executor or administrator shall be subject to personal service in the same manner as a nonresident. This section shall not apply to a cause of action for defamation of character arising from the act.
[11] A question does arise over whose law should characterize the act as wrongful: the state where the act occurred, or Florida. As Florida follows the rule of lex loci delicti, the most probable answer would be the law of the place where the act occurred.
[12] For an analysis of this statute see Bayitch, supra note 7, 26 U.Miami L.Rev. at 25. Professor Bayitch correctly points out that Florida does not have a statute which creates "long-arm jurisdiction" over a nonresident who commits a wrongful act within the state. Therefore, the reference in Florida Statute § 48.182, F.S.A., to this nonexistent statute raises serious questions as to what procedure should be followed in attempts to serve process under this statute. We would urge the legislature to reconsider this statute, and if found wanting, to amend the statute to correct its deficiencies.